FILED
2015 MAR 19 AM 9:26
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
             DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**JOHN WAYNE COPELAND,**
        **Plaintiff,**

-vs-                                                        Case No. A-13-CA-514-SS

**UNITED RENTALS, INC., and GEHL COMPANY n/k/a MANITOU AMERICAS INC.,**
        **Defendants.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant United Rentals, Inc.'s Renewed Motion for Judgment as a Matter of Law [#160], Plaintiff John Wayne Copeland's Response [#163] thereto, Defendant United Rentals' Reply [#168] thereto, Plaintiff's Motion for Entry of Judgment [#161], Defendant United Rentals' Response [#165] thereto, and Plaintiff's Reply [#169] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On October 30, 2012, Plaintiff John Wayne Copeland was injured while operating a Gehl RS8-42 Telescopic Handler (telehandler), a type of "rough terrain"[1] forklift with an extendable boom. Copeland's employer leased the telehandler from Defendant United Rentals (UR), which was contractually obligated to perform maintenance on the telehandler. While Copeland was driving the

---

[1] *See* Pl.'s Resp. [#163-2] Ex. B (Johnson Trial Tr.) at 7:12–18 (Gehl's expert, explaining the ANSI B56.6 safety standard applies to rough terrain vehicles like the telehandler at issue); Trial Ex. GEHL-71 (ANSI B56.6 safety standard for rough terrain forklift trucks).

telehandler over a cattle guard on a gravel road, the fork carriage detached from the boom and one of the two forks pierced the floorboard of the cab, severely injuring Copeland's leg. Copeland brought suit against UR and Gehl Company (Gehl), the manufacturer of the telehandler.

The case was tried to a jury from January 12, 2015 through January 15, 2015, and from January 20, 2015 through January 21, 2015. Copeland proceeded on two claims: a design defect claim against Gehl and a negligent maintenance claim against UR. The jury returned a verdict in favor of Gehl on the design defect claim, but found UR liable for negligent maintenance of the telehandler. Copeland's pleadings set forth two theories of negligent maintenance: first, that UR failed to maintain the spring component of the mechanism which locks the carriage to the boom; and second, that UR failed to maintain the locking plate component of the mechanism which locks the carriage to the boom. The Court submitted both theories to the jury, which found UR was negligent in failing to maintain the locking plate component of the lock mechanism. *See* Verdict Form [#159] at 3.

UR promptly filed its renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b),[2] arguing Copeland presented no evidence of the standard of care, breach, or causation with respect to failure to maintain the locking plate. Copeland has cross-moved for entry of judgment. For the reasons set forth below, the Court GRANTS UR's renewed motion for judgment as a matter of law and DENIES Copeland's motion for entry of judgment.

---

[2] Renewed motions for judgment as a matter of law under Rule 50(b) were formerly known as motions for judgment notwithstanding the verdict, or JNOV. *See, e.g., Smith v. Louisville Ladder Co.*, 237 F.3d 515, 525–26 (5th Cir. 2001).

Analysis

**I.      Renewed Rule 50(b) Motion**

**A.      Legal Standard**

When ruling on a Rule 50(b) motion for judgment as a matter of law, "[a] jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004). Accordingly, the question for this Court "is whether the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Id.* (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

**B.      Application**

UR argues it is entitled to judgment as a matter of law on Copeland's negligent maintenance claim because Copeland failed to establish the applicable standard of care, breach, or causation. As explained below, Copeland's failure to adduce any competent evidence establishing the applicable standard of care is dispositive of the pending motions. UR is entitled to judgment.

Familiarly, the elements of a negligence cause of action are (1) a legal duty, (2) breach of that duty, and (3) damages proximately caused by the breach. *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 738 (Tex. App.—Amarillo 1999, pet. denied) (citing *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Expert testimony must establish both the applicable standard of care and breach of the standard where the alleged negligence "is of such a nature as not to be within the experience of the layman." *Id.* (citing *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982); *Hager v.*

*Romines*, 913 S.W.2d 733, 734–35 (Tex. App.—Fort Worth 1995, no writ)). In determining whether expert testimony is necessary, Texas courts consider whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004).

### 1. Copeland was required to present expert testimony establishing the applicable standard of care

Here, the Court finds Copeland was obligated to present expert testimony establishing the applicable standard of care. *Fulgham* is instructive. Fulgham, a tractor-trailer driver, brought a negligent maintenance claim against a freight company, FFE, following a highway accident in which the coupler assembly attaching FFE's refrigerated trailer to Fulgham's tractor broke loose from the trailer, causing Fulgham to lose control and crash. *Id.* at 87, 86. Fulgham alleged the accident was caused by weak, rusted bolts anchoring the coupler assembly to the trailer, and that in failing to replace the bolts, FFE had failed to adequately inspect and maintain the trailer. *See id.* at 87. The case proceeded to trial, and following the close of plaintiff's evidence, the trial court granted a directed verdict for FFE on grounds Fulgham had presented no probative expert testimony on the applicable standard of care. *Id.* The appellate court reversed, holding "the inspection and detection of loose and rusty bolts connecting parts of a trailer" was a factual question readily understandable to a layperson. *Id.* The Texas Supreme Court, however, disagreed. According to the court:

> Few people not involved in the trucking industry are familiar with refrigerated trailers, the mechanisms for connecting them to tractors, and the frequency and type of inspection and maintenance they require. While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge. Therefore, the layman does not know what the standard of care is for the inspection and maintenance of the . . . coupler assembly[.]

*Id.* at 91. Consequently, the court found expert testimony necessary to establish the standard of care. *Id.*

In this case, as in *Fulgham*, the ordinary person does not know the applicable standard of care. Laypersons are not familiar with telehandlers or with the mechanisms by which fork carriages are attached to booms. While, as a mechanical or conceptual matter, the telehandler's locking mechanism—a metal locking plate, a metal stop bar, and a cradle—may, like the bolts in *Fulgham*, be relatively simple, it does not follow that maintenance of the locking plate is a matter familiar to ordinary persons.

Copeland's allegation UR was negligent by failing to replace the locking plate relies upon his claim the plate was "badly mushroomed" and "shortened" such that it was easier for the plate to disengage. *See* Pl.'s Resp. [#163] at 10–11 (arguing testimony regarding the mushrooming and shortening of the plate was sufficient to establish causation). As in *Fulgham*, while an ordinary person may be able to detect whether the edge of a locking plate is mushroomed or shortened, determining whether the mushrooming or shortening is sufficient to create a danger requires specialized knowledge. *See* 154 S.W.3d at 91. Indeed, the conflicting testimony offered at trial as to whether a worn leading edge would make the locking plate more or less likely to disengage points toward that conclusion. *Compare* Renewed Mot. J. Matter of Law [#160-7] Ex. G (Bond Trial Tr.) at 34:3–5, 35:25–36:9 (testifying wear on the edge of the locking plate was "[n]ormal wear that you would expect from two metal components rubbing against each other" and would "actually [make the locking plate] fit in that groove even better"), *with* Pl.'s Resp. [#163-1] Ex. A (Albert Trial Tr.) at 24:21–25:4 (testifying wear on the plate caused the mechanism to become unlocked, causing the

Case 1:13-cv-00514-SS   Document 170   Filed 03/19/15   Page 6 of 8

accident). Accordingly, it was Copeland's burden to present expert testimony concerning the standard of care to be applied in this case.[3]

### 2. Copeland failed to present expert testimony establishing the applicable standard of care

Copeland argues even if expert testimony was necessary to establish the standard of care, he put on sufficient expert testimony to do so. The Court disagrees.

In a portion of his briefing completely devoid of citations to the trial transcript, Copeland states he provided expert testimony as to the standard of care because his expert, James Albert—who had never before serviced, driven, tested, inspected, or otherwise worked with a telehandler—"testified about how the locking plate worked, that it was damaged, and that the damage contributed to the accident." Pl.'s Reply [#169] at 3–4. That (unspecified) testimony, however, provides the Court with no information as to the applicable standard of care concerning maintenance of the locking plate. Albert gave no opinions regarding what a reasonably prudent maintenance company responsible for maintaining a telehandler would do in performing such maintenance, let alone what a reasonably prudent maintenance company would do with respect to the locking plate; he did not testify as to any standard for the maintenance of telehandlers prevalent throughout the industry; nor did he offer his opinion regarding even the appropriate frequency and scope of inspections of the telehandler and the locking plate.

---

[3] Copeland argues this case is more closely analogous to *Scurlock Oil Co. v. Harrell*, 443 S.W.2d 334, 337 (Tex. App.—Austin 1969, writ ref'd n.r.e.), in which a Texas court of appeals held expert testimony unnecessary to establish the standard of care, as "[a] pipe that has deteriorated to a point where it will no longer contain the liquid that it was meant to contain is not a fact so peculiar to a specialized industry that the defect can only be established through expert testimony." *Id.* at 142. In *Fulgham*, however, the Texas Supreme Court specifically rejected the plaintiff's analogy to *Scurlock*, which the plaintiff had relied upon in the lower courts, and the undersigned rejects it here. *See Fulgham*, 154 S.W.3d at 91.

The totality of Copeland's post-trial briefing betrays his mistake on this point: Copeland believes the testimony of Eddie Vasquez—a non-expert—was sufficient to establish the applicable standard of care.[4] Vasquez is a UR service technician who was sent to replace a bent fork on the subject telehandler on October 8, 2012, a few weeks prior to Copeland's accident. At trial, Copeland elicited testimony that Vasquez, under the terms of UR's maintenance contract with Copeland's employer, was required to "use professional skill and judgment in performing his maintenance duties." Pl.'s Resp. [#163] at 8. Vasquez then testified he did not look at the leading edge of the locking plate during the maintenance he performed on October 8, 2012, as UR had never trained him to do so. Pl.'s Resp. [#163-3] Ex. C (Vasquez Trial Tr.) at 5:4–9, 11:6–9.

As UR points out, none of the above establishes the applicable standard of care. Crucially, there is no expert testimony in the record indicating a reasonable company in UR's position would have trained its service technicians to look at the leading edge of the locking plate, nor any evidence of any regulation, service manual, industry practice, or the like even suggesting UR should have done so. Further, the contractual requirement UR technicians exercise "professional skill and judgment" does not explain what professional skill and judgment demands in this context. *See 3D/I + Perspectiva v. Castner Palms, Ltd.*, 310 S.W.3d 27, 31 (Tex. App.—El Paso 2010, no pet.) (rejecting plaintiff's argument contractual provision established standard of care because the contract did not explain what the standard actually meant). Finally, even if the Court was to glean some information regarding the applicable standard of care from the maintenance contract, expert testimony would still

---

[4] Notably, during trial, the Court sustained several objections to questions posed to Vasquez which asked for Vasquez's opinion as though he were an expert. *See, e.g.*, Pl.'s Resp. [#163-3] Ex. C (Vasquez Trial Tr.) at 14:15–22 ("THE COURT: You're asking him [Vasquez] an opinion. He's not an expert. He hasn't been disclosed as an expert by the plaintiff.").

be required to establish it. *Id.* (citing *Battaglia v. Alexander*, 177 S.W.3d 893, 899 (Tex. 2005)). The Court finds Copeland failed to adduce the required expert testimony concerning the standard of care to be applied in this case.

The Court need not reach the remainder of UR's arguments. Because Copeland was required to present expert testimony establishing the standard of care to be applied in this case and failed to do so, UR is entitled to judgment as a matter of law, notwithstanding the jury's verdict, and Copeland's motion for entry of judgment must be denied.

## Conclusion

Accordingly:

IT IS ORDERED that Defendant United Rentals, Inc.'s Renewed Motion for Judgment as a Matter of Law [#160] is GRANTED;

IT IS FURTHER ORDERED that Defendant United Rentals, Inc.'s Motion for Judgment as a Matter of Law [#138] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Defendant Gehl Company's Motion for Judgment as a Matter of Law [#136] is DISMISSED AS MOOT;

IT IS FINALLY ORDERED that Plaintiff John Wayne Copeland's Motion for Entry of Judgment [#161] is DENIED.

SIGNED this the 19th day of March 2015.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE